ADAM I. GAFNI, Cal. Bar No. 230045
**WOOLF GAFNI & CIRLIN LLP**
10850 Wilshire Blvd., Suite 510
Los Angeles, CA 90024
Tel: (310) 474-8776
Fax: (310) 919-3037
E-mail: adam.gafni@wgclawyers.com

Attorneys for Plaintiff, BARRY ROSEN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ROSEN,<br><br>                Plaintiff,<br><br>vs.<br><br>HOSTING SOLUTIONS INTERNATIONAL, INC.; MOOSENETBIZ, LLC; INTERGROUP VISTA, LLC; JUSTIN ROSSETTI; DOES 1-10.<br><br>                Defendant. | Case No.:<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, BARRY ROSEN, alleges against HOSTING SOLUTIONS INTERNATIONAL, INC.; MOOSENETBIZ, LLC; INTERGROUP VISTA, LLC; JUSTIN ROSSETTI; and DOES 1-10 inclusive as follows:

///

///

**PARTIES**

1.      Plaintiff Barry Rosen ("Plaintiff") is a professional photographer who currently and at all relevant times has resided within the County of Los Angeles, California.  Plaintiff's images are copyrighted images, registered with the United States Copyrights Office, to which Plaintiff owns all rights, title, and interest.

2.      Plaintiff is informed and believes that Defendant MOOSENETBIZ, LLC ("Moosenetbiz") at all relevant times was a Georgia limited liability corporation.

3.      Plaintiff is informed and believes that Defendant JUSTIN ROSSETTI ("Rossetti"), is an individual, who at all relevant times resided in Johns Creek, Georgia and was the sole owner and shareholder of Moosenetbiz.

4.      Plaintiff is informed and believes that Moosenetbiz and Rossetti at relevant times owned, operated, and controlled the website www.lazygirls.info and related sub-Uniform Resource Locators (URLs) (hereinafter the "Website.")

5.      Plaintiff is informed and believes that Defendant INTERGROUP VISTA, LLC ("Intergroup") is a Florida limited liability corporation.

6.      Plaintiff is informed and believes that at some point between April 1, 2013 and June 30, 2013, Intergroup acquired the Website (and associated data and files) from Moosenetbiz and Rossetti and thereafter up and until the filing of this Complaint owned, operated, and controlled the Website.  Plaintiff further believes that Rossetti may still be involved in the operation of the website.

7.      Plaintiff is informed and believes that Defendant HOSTING SOLUTIONS INTERNATIONAL, INC. (hereinafter "Hosting") is a Missouri corporation and is a subsidiary of the European based company BSB Service GmbH.

8.      Plaintiff is informed and believes that Hosting is what is commonly termed an internet service provider that owns, operates, hosts, and/or otherwise provides

COMPLAINT FOR COPYRIGHT INFRINGEMENT

essential services for the Website allowing it to operate and/or engage in infringing activities.

9.     Plaintiff is informed and believes that the electronic copies of the copyrighted photographs at issue in this action (i.e. infringing images) and other data for operation of the Website reside or are otherwise stored, transmitted, and served by servers owned, operated, and/or controlled by Hosting on a system or network controlled and/or operated by or for Hosting.

10.    Plaintiff is informed and believes that the Website is dedicated to publishing and displaying celebrity images most of which consist of unauthorized copies of copyrighted images that are copied, uploaded, and publicly displayed by third parties on the Website (hereinafter "Third Party Uploaders.")

11.    Plaintiff is informed and believes that these Third Party Uploaders, include, *inter alia*, those individuals identified on the Website by the user names of: Bast0207 (aka $$$Bast0207), AdriusX101, milo45, Punxter, user99a2 (aka $$$user99a2), yukonlyc, JK00, tuggy (aka $$tuggy), WolfWarrior (aka $$$WolfWarrior).

12.    Plaintiff is further informed and believes that by virtue of the photographs being made uploaded distributed to and publicly available on the Website other third parties obtain, copy, download, and publicly distribute unauthorized copies of infringing photographs from the Website (hereinafter the "Third Party Downloaders.")

13.     Collectively, the Third Party Uploaders, including but not limited to the users identified in paragraph 11 and the Third Party Downloaders shall be referred to hereinafter as the "Third Party Direct Infringers."

14.    Plaintiff does not presently know the true names and capacities of the Defendants named as Does 1 through 10, including but not limited to the Third

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

Party Direct Infringers, and therefore sues such Defendants by these fictitious names.  Plaintiff believes that the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, agents, or employees of the known Defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts for financial gain and profit, in violation of Plaintiff's rights.  Plaintiff will request leave from the Court to amend this Complaint to set forth their true names, identities and capacities when Plaintiff ascertains them. The Doe Defendant and the known Defendant are referred to collectively as "Defendants."

15.    Plaintiff is informed and believes that Defendants have been or are the principals, officers, directors, agents, employees, representatives, and/or co-conspirators of each of the other Defendants, and in such capacity or capacities participated in the acts or conduct alleged herein and incurred liability therefore. Plaintiff is informed and believes that at some unknown time, the Defendants or some of them entered into a conspiracy with other of the Defendants to commit the wrongful acts described herein; the actions described below were taken in furtherance of such conspiracy; and Defendants aided and abetted each other in the wrongful acts alleged herein. Plaintiff is informed and believes that each of the Defendants acted for personal gain or in furtherance of their own financial advantage in doing the acts alleged below.

## **JURISDICTION AND VENUE**

16.    Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and all Exhibits as if fully set forth herein.

17.    ***Subject Matter Jurisdiction:*** This action arises under the Copyright Act, 17 U.S.C. sections 101 *et seq.* and 501(a) *et seq.* This Court has original subject

matter jurisdiction over all claims, pursuant to 28 U.S.C. sections 1331 and 1338(a).

18.     ***Venue:***  Plaintiff is informed and believes that venue is proper in this Court, pursuant to 28 U.S.C. section 1391(b),(c),(d), and Section 1400(a) in that the claims arise in this Judicial District, the injury suffered by Plaintiff took place in this judicial district, and Defendants transact business in this judicial district.

19.     ***Personal Jurisdiction:***  Plaintiff is informed and believes that personal jurisdiction is proper over the Defendants because for years Defendants operated and/or currently operate commercial businesses through which Defendants knowingly, systematically, and continuously transacted or transact  business and enter or entered into contracts on an ongoing basis with and provide or provided services to individuals or companies in California, including within the County of Los Angeles; and Defendants have engaged in intentional acts that willfully infringed or assisted in the infringement of Plaintiff's copyrights within California.

20.     Plaintiff is further informed and believes that the Defendants have purposefully directed substantial activities to California, or otherwise have significant contact with California, and material elements of Defendants' wrongdoing occurred in this State, including but not limited to:

      a.   Defendants with actual and/or constructive knowledge caused, assisted, and/or contributed to copyrighted images belonging to Plaintiff, a California resident, of well-known California celebrities to be posted on the World Wide Web via the Website after actual or constructive knowledge that failing to cease infringing activity, terminate infringing users, and engage in basic means to prevent such infringement such as removal of specifically identified images would cause injury to Plaintiff in California;

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

b. Defendants knowingly caused damages in Los Angeles, California, including but not limited to continuing to contribute to the infringement of Plaintiff's copyright photographs of well-known California celebrities on the World Wide Web via the Website even after receiving actual and/or constructive knowledge that Plaintiff and such celebrities resided in Los Angeles, California.

c. Defendants have continuously and deliberately exploited the California market;

d. Defendants caused, assisted, and knowingly contributed to infringing images being distributed and displayed to and copied by persons in Los Angeles County and California;

e. The California viewer base and/or clients are and/or were an integral component of Defendants' business model and profitability.

f. Defendants enter and/or entered into substantial and ongoing contracts with advertising and marketing companies some of which are located within the State of California (such as, Google, Inc.) with the knowledge and purpose that such advertisements and marketing for their services be directed to, received by, and target persons within the State of California.

g. Defendants maintains and operate or maintained and operated highly interactive websites designed to solicit, market, and serve customers within California and the United States through which Defendants enter into substantial and significant ongoing transactions for services with California customers, and through which a great volume of California customers consistently and actively order, change, monitor, and maintain services;

h. Defendants knowingly and with constructive knowledge communicate

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

and/or communicated in writing, email, and/or telephonically with customers, partners, or resellers, located within California and within this judicial district to market materials, provide technical assistance and solicit additional services and opportunities;

i. Defendants knowingly and/or with constructive knowledge store and/or stored images and data uploaded to its servers by California customers and managed by California customers, and transmit or deliver and/or transmitted or delivered such images and data to its customers or customers' customers (final users or viewers) located within California and then volitionally engage and/or engaged in conduct such as renewing such agreements, maintenance, and other conduct they know or foresee will result in the continuing of such conduct directed to and having effect in California.

## <u>FACTUAL ALLEGATIONS</u>

21.   Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and all Exhibits as if fully set forth herein.

22.   Plaintiff Rosen is an individual photographer.  Plaintiff created the thirty (39) photographs, which are identified in Exhibit 1 attached hereto ("Photographs") and incorporated by reference as if fully set forth herein.  Each of the Photographs consists of material original with Plaintiff and each is copyrightable subject matter.  Plaintiff is the owner of all rights, title, and interest in and to each of the Photographs.

23.   Plaintiff is informed and believes that, prior to the time of the infringements as alleged herein, Plaintiff had registered the copyrights for the Photographs and had been issued Certificates of Registration.

24.     Under Section 106 of the Copyright Act of 1976, 17 U.S.C. section 101 et seq. (the "Copyright Act"), Plaintiff has the distinct, severable, and exclusive rights, *inter alia*, to reproduce, distribute and publicly display the Photographs. (17 U.S.C. § 106(1), (3), and (5).)

25.     Plaintiff is informed and believes that at all relevant times the Website and all the infringing images at issue were publicly accessible and actually distributed to members of the public (including, but not limited to, through all sub-URLs).

26.     Between October 2009 and April 2010, Plaintiff discovered that the Third Party Direct Infringers had unlawfully copied, uploaded/downloaded, publicly displayed and distributed a total of approximately 128 of his copyrighted photographs on the Website, constituting direct copyright infringement, pursuant to sections 106 and 501 of the Copyright Act (17 U.S.C section 106 and 501). Hereinafter, these infringements shall be referred to as the 2009/2010 Direct Infringements.

27.     Between October 2009 and April 2010, Plaintiff via fax and email sent Hosting approximately ten (10) separate takedown notices pursuant to the Digital Millennium Copyright Act (DMCA) (hereinafter the "2009/2010 DMCA Notices") identifying all the direct copyright infringements he had discovered on the Website, which totaled approximately 128 separate direct copyright infringements occurring on the Website. In the 2009/2010 DMCA Notices, Plaintiff advised Hosting that it was dealing with a "very serious infringer" and with such knowledge could be held liable as a contributory infringer for continued hosting of the Website.

28.     Plaintiff is informed and believes that Hosting, Moosenetbiz, and Rossetti received all 2009/2010 DMCA Notices because, *inter alia,* (1) Hosting responded to Plaintiff's first notice advising him of the correct email address to send such

COMPLAINT FOR COPYYRIGHT INFRINGEMENT

notices, (2) Plaintiff used the email address provided by Hosting to send all notices, and (3) Hosting forwarded Plaintiff's DMCA notices to Moosenetbiz and Rossetti who responded to Plaintiff by including the emails that had been forwarded to them from Hosting.

29.    Plaintiff is informed and believes that the 2009/2010 DMCA Notices provided Hosting, Moosenetbiz, and Rossetti with actual and/or constructive "red flag" notice of rampant direct infringements occurring on the Website.

30.    Plaintiff is informed and believes that Defendants Hosting, Moosenetbiz, and Rossetti, also received additional actual and/or constructive "red flag" knowledge of rampant direct infringements occurring on the Website by way of other third party copyright holders who also sent numerous copyright infringement notifications (including those that are DMCA Complaint) to Hosting who forwarded such notices to Moosenetbiz and Rossetti.

31.    Despite being on notice that rampant copyright infringements was occurring on the Website, Hosting failed to terminate its services to the Website and to remove certain specific infringing images, allowing the Third Party Direct Infringers to directly infringe and continue to infringe with impunity and the website owners to continue assist in such infringing activities.

32.    Despite being on notice that its Website was being used almost exclusively by copyright infringers to unlawfully distribute copyrighted images to the public, Hosting, Moosenetbiz, Intergroup and Rossetti failed to take simple measures to prevent future infringements that they knew were inevitable and willfully turned a blind eye to the infringements.

33.    On or about January 12, 2012, Plaintiff again discovered that Third Party Direct Infringers had unlawfully copied, uploaded/downloaded, publicly displayed and distributed his copyrighted photographs on the Website, constituting direct

copyright infringement. Specifically, he discovered that Third Party Uploaders copied, uploaded, published and publicly distributed five (5) photographs of Erika Eleniak (Copyright registration numbers VAu692-231), four photographs of Jeri Ryan (Copyright registration numbers VA 1-231-031 and VAu660-267), and six photographs of Sonia Vera (copyright registration numbers VA 1-239-762) (collectively the "January 2012 Infringements").

34.    On or about January 12, 2012, Plaintiff sent Hosting a DMCA notice via fax and email regarding the January 2012 Infringements, which were a total of seventeen (17) infringements identified by specific URLs (hereinafter the "January 2012 DMCA Notice"). The January 2012 DMCA Notice was the eleventh DMCA notice Hosting received from Plaintiff regarding the Website.

35.    Plaintiff is informed and believes that Hosting, Moosenetbiz and Rossetti, received the January 2012 DMCA Notice because, *inter alia*, (1) Plaintiff used the email address provided by Hosting to send all notices, (2) Hosting responded to Plaintiff's email, (3) and, Hosting forwarded Plaintiff's DMCA notices to Moosenetbiz and Rossetti who responded to Plaintiff by including the emails that had been forwarded from Hosting.

36.    Plaintiff is informed and believes that the Third Party Direct Infringer known as user "WolfWarrior aka $$$WolfWarrior" who posted two of the images identified in the January 2012 DMCA was a repeat copyright infringer who had posted twenty six (26) of the images Plaintiff identified in the 2009/2010 DMCA Notices and that Defendants having received the 2009/2010 DMCA Notices were on notice of his repeat copyright infringements and failed to terminate services to him/her despite having the physical ability and right through contract to do so.

37.    Plaintiff is informed and believes that the Third Party Direct Infringer known as user "AdriusX101" identified in the January 2012 DMCA Notices was

also a subject of the 2009/2010 DMCA Notices and re-posted six (6) of the exact same photographs that had already been identified by Plaintiff in the prior 2009/2010 DMCA Notices and that Defendants having received the 2009/2010 DMCA Notices were on notice that the Photographs that were re-posted were infringing and willfully and/or recklessly failed to prevent the re-posting and despite being on notice of AdriusX101's repeat copyright infringement failed to terminate services.

38.     Plaintiff is informed and believes that the January 2012 DMCA Notice provided additional actual and/or constructive "red flag" notice to Hosting, Moosenetbiz, and Rossetti of rampant direct infringements occurring on the Website.

39.     Plaintiff is informed and believes that Defendants Hosting, Moosenetbiz, and Rossetti, also received additional actual and/or constructive "red flag" knowledge of rampant direct infringements occurring on the Website, including by way of other third party copyright holders who also sent numerous copyright infringement notifications (including DMCA-compliant notices), to Hosting who forwarded such notices to Moosenetbiz and Rossetti and/or directly to Moosenetbiz, Rossetti, and INTERGROUP. Such notice, to Moosenetbiz, Rosetti and Intergroup includes actual statements on the Lazygirls website indicating that many users (i.e. Third Party Direct Infringers which include but are not limited to the specific users identified above) had been repeatedly reported as caught engaging in copyright infringing activities such as uploading and copying images from magazines and magazine covers.

40.     Despite being on notice that rampant copyright infringements was occurring on the Website, Hosting failed to terminate its services to the Website allowing the Third Party Direct Infringers to infringe with impunity.

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

41.     Despite being on notice that its Website was being used almost exclusively by copyright infringers to unlawfully distribute copyrighted images to the public, Moosenetbiz, Rossetti, and INTERGROUP, failed to take simple measure to prevent future infringements that they knew were inevitable and willfully turned a blind eye to the infringements occurring on the site; instead opting to induce and encourage such infringements by engaging in revenue sharing or profit making with Third Party Direct Infringers as well as essentially advertising or boasting to infringers regarding the excessive quantity of infringing activity active users engage in by showing on users' profiles the quantity of reported violations, reported magazine covers and reported magazines that users uploaded and then indicating that they were top users with "$" indications and how many views they had received.

42.     On or about July 18, 2012, Plaintiff again discovered that the Third Party Direct Infringers unlawfully copied, displayed, and made publicly available unauthorized copies of his copyrighted photographs on the Website, constituting direct copyright infringement.  Specifically, the four (4) photographs being unlawfully infringed were four (4) copyrighted photographs of Lana Parrilla (copyright registration number VA 1-230-923) (hereinafter the "July 2012 Infringements).

43.     On or about July 18, 2012, Plaintiff sent Hosting a DMCA notice identifying the photographs and specific URLs that were infringing on his copyrights (hereinafter the "July 2012 DMCA Notice".)  The July 2012 DMCA Notice was the twelfth separate DMCA notice that Hosting received from Plaintiff regarding the Website.  Plaintiff advised Hosting that he now had documented more than 140 infringements occurring on the Website, which he had sent them by way of twelve (12) DMCA notices.

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

44.     Plaintiff is informed and believes that Hosting, Moosenetbiz and Rossetti, received the July 2012 DMCA Notice because, *inter alia*, (1) it was sent to the email address provided by Hosting for sending such notices, and (2) Moosenetbiz and Rossetti responded to Plaintiff and included the email that Hosting had forwarded it containing Plaintiff's DMCA notice.

45.     Plaintiff is informed and believes that the July 2012 DMCA Notice further provided actual and/or constructive "red flag" notice to Hosting, Moosenetbiz and Rossetti of rampant direct infringements occurring on the Website.

46.     Plaintiff is informed and believes that Defendants Hosting, Moosenetbiz, and Rossetti, also received additional actual and/or constructive "red flag" knowledge of rampant direct infringements occurring on the Website by way of other third party copyright holders who also sent numerous copyright infringement notifications to Hosting who forwarded such notices to Moosenetbiz and Rossetti.

47.     Despite being on notice that rampant copyright infringements was occurring on the Website, Hosting failed to terminate its services to the Website allowing the Third Party Direct Infringers to infringe with impunity.

48.     Despite being on notice (including through compliant DMCA notice) that its Website was being used extensively, if not almost exclusively, by copyright infringers to unlawfully distribute copyrighted images to the public, Moosenetbiz and Rossetti failed to take simple measure to prevent future infringements that they knew were inevitable and willfully turned a blind eye to the infringements and users which continued to operate with impunity.

49.     Plaintiff is informed and believes that at some point between April 1, 2013 and June 30, 2013, Defendant Intergroup acquired the Website from Moosenetbiz and Rossetti and obtained ownership, operation, and control over the Website.

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

50.    Plaintiff is further informed and believes that Defendant Intergroup when it acquired and obtaining ownership, operation, and control of the Website obtained and/or had access to and constructive knowledge of all information related to the Website from Moosenetbiz and/or Rossetti, including but not limited to all files, records, documents, and communications pertaining to the Website, which included all the DMCA notices sent by Plaintiff and other third parties related to the Website, which provided Defendant Intergroup with actual and/or constructive knowledge of the rampant copyright infringement occurring on the Website and the direct infringement identified in the 2009/2010 DMCA Notices, January 2012 DMCA Notices, and July 2012 DMCA Notices.

51.    On or about October 29, 2013, Plaintiff discovered that Third Party Direct Infringers again infringed on Plaintiff's copyrights by copying, uploading/downloading, distributing, and publicly displaying thirteen (13) photographs of Daisy Fuentes (copyright registrations numbers VAu692-230, VA1-230-934, and VA 1-239-762), one (1) photograph of Lana Parilla (copyright registration number VA 1-230-923), three (3) photographs of Jeri Ryan (copyright registration numbers VAu660-267 and VA 1-231-030), and two (2) photographs of Amy Weber (copyright registration numbers VA 1-230-937) on the Website (hereinafter the "October 2013 Infringements.")  On or about that same day, Plaintiff sent Hosting a DMCA notice (hereinafter "October 2013 DMCA Notice") identifying the infringing Photographs together with the specific URLs.

52.    Plaintiff is further informed and believes that both Hosting and Intergroup received the October 2013 DMCA Notice because, *inter alia*, it was sent to the email address provided by Hosting to Plaintiff for sending such notices, Hosting had demonstrated that its habit and custom was to forward all DMCA notices to

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

the owner of the Website, and Plaintiff forwarded a courtesy copy of the October 2013 DMCA Notice to Intergroup on October 29, 2013.

53.     Plaintiff is informed and believes that the Third Party Direct Infringer identified as user Bast0207 aka $$$Bast0207 who posted at least fourteen (14) of the Photographs identified in the October 2013 DMCA Notice had posted three (3) of the Photographs identified in the January 2012 notice and that Defendants Hosting and Intergroup were on notice that Bast0207 was a repeat copyright infringers yet failed to terminate services to Bast0207.

54.     Plaintiff is informed and believes that the October 2013 DMCA Notice further provided actual and/or constructive "red flag" notice to Hosting and Intergroup of rampant direct infringements occurring on the Website.

55.     Plaintiff is informed and believes that Defendants Hosting, and Intergroup, also received additional actual and/or constructive "red flag" knowledge of rampant direct infringements occurring on the Website by way of other third party copyright holders who also sent numerous copyright infringement notifications to Hosting who forwarded such notices to Intergroup.

56.     Despite being on notice that rampant copyright infringements was occurring on the Website, Hosting failed to terminate its services to the Website allowing the Third Party Direct Infringers to infringe with impunity.

57.     Despite being on notice that its Website was being used almost exclusively by copyright infringers to unlawfully distribute copyrighted images to the public, Intergroup failed to take simple measure to prevent future infringements that it knew were inevitable and willfully turned a blind eye to the infringements.

58.     Plaintiff is informed and believes that, as of the date of the filing of this Complaint, many of the specific infringements identified by URLs in the October 2013 DMCA Notice have been made available and continue to be distributed in

violation of Mr. Rosen's copyrights, including to members of the public via the Website, including but not limited to the following URLs:

- http://img003.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_0015_YpHaIAOF.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_002_H3Ihzohp.sized.jpg
- http://img003.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_0014_7l9BYnPh.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_0010_09Elb36S.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_008_D5dtRsLv.sized.jpg
- http://img003.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_006_jz8VZWoR.sized.jpg
- http://img003.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_009_q95Uh20T.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_001_UHNeVUUA.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_005_hvYe5Im2.sized.jpg
- http://img005.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_007_XqIrds01.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_003_gFgUwrpE.sized.jpg
- http://img005.lazygirls.info/people/lana_parrilla/lana_parrilla_open_your_eyes_magazine_2002_8mcdgdGR.thumb.jpg
- http://img004.lazygirls.info/people/amy_weber/amy_weber_cover_ABMTbRTG.sized.jpg
- http://img004.lazygirls.info/people/amy_weber/amy_weber_white_hot_QIZprUfh.sized.jpg
- http://lana_parrilla_open_your_eyes_magazine_2002_8mcdgdGR.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_0012_fybsn8rX.sized.jpg
- http://img004.lazygirls.info/people/daisy_fuentes/daisy_fuentes_barry_rosen_shoot_004_lTPUuNOa.sized.jpg

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

59.     Plaintiff is informed and believes that Defendants Moosenetbiz, Rossetti, and Intergroup had/have physical capabilities and right through contract to terminate users who are repeat copyright infringers and to control the content that is uploaded on their websites including, *inter alia*, by virtue of their own policies which, include but are not limited to the following:

 a. "It is lazygirls's policy, in appropriate circumstances and at its discretion, to disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights or other intellectual property rights of others."

 b. "lazygirls.info reserves the right to remove or replace any uploaded files."

60.     Plaintiff is informed and believes that Defendants Moosenetbiz, Rossetti and Intergroup despite having the physical ability and right through contract to control the content that is uploaded on its Website and terminate repeat infringers failed to implement its policies and take reasonable means to prevent the infringements and/or terminate repeat infringers and encouraged and induced infringers as stated herein, *inter alia*, through revenue sharing and user profile information and data regarding photographs viewed.

61.     Plaintiff is further informed and believes that Defendants Moosenetbiz, Rossetti and Intergroup, further provide and/or provided through their policies that "any original, untouched, or high quality photo taken by a professional photographer are not permitted."

62.     Plaintiff is informed and believes that Defendants Moosenetbiz, and Intergroup, include and or included this language under their copyright policies because they are aware that such photographs that are "original,

untouched, or high quality photo(s) taken by professional photographer(s)" are copyright images to which these third parties would not have a right to upload.

63.     Plaintiff is informed and believes that all the Photographs at issue in this case are "original, untouched, or high quality photo(s) taken by professional photographer(s)" and that the majority of the Website's content consists of "original, untouched, or high quality photo(s) taken by professional photographer(s)," and Defendants Moosenetbiz, Rossetti, and Intergroup did not and/or do not take reasonable action to implement their policies or prevent the use of such images that they clearly know are copyright photographs because, *inter alia*, without such images the Website would cease to exist and Defendants get a financial benefit from such infringing photographs, including the ones at issue in this case, as the photographs are a draw to current and prospective customers, and advertisers who advertise on the Website, and Defendants generate revenue when individuals view the infringing images.

64.     Plaintiff is further informed and believe that not only did and/or do Defendants' Moosenetbiz, Rossetti, and Intergroup fail to prevent knowing copyright infringement, but they actually induce the infringements by third parties, including those at issue in this case by, *inter alia*, providing incentives for users involved in their VIP Partnership Program or other incentive programs to post infringing images, including but not limited to giving them a portion of the revenue earned when individuals view the images, and giving them special recognition when posting in the forums and when signed in indicated by the Dollar signs ($) placed in front of their user name.

65.     Plaintiff is informed and believes that at least some of the Third Party Direct Infringers, including but not limited to the users identified as Bast0207 (aka $$$Bast0207),tuggy (aka $$tuggy), user99a2 (aka $$$user99a2), and WolfWarrior

(aka $$$WolfWarrior ) were part of the VIP Partnership or other incentive Programs.

66.     Plaintiff is informed and believes that Defendants' Moosenetbiz, Rossetti, and Intergroup are aware that the images posted through the VIP Partnership Program, including the photographs at issue in this case, are infringing because the eligibility requirement for the partnership program, require users to provide "proof of content ownership" and the Third Party Direct Infringers at issue, including, *inter alia*, Bast0207 (aka $$$Bast0207),tuggy (aka $$tuggy), user99a2 (aka $$$user99a2), and WolfWarrior (aka $$$WolfWarrior ), could not have and did not provide such proof of content ownership, yet Defendants allowed the Third Party Direct Infringers to post the infringing photographs.

67.     Plaintiff is informed and believes that Defendants Moosenetbiz, Rossetti, and Intergroup failed to reasonably implement their copyright policies and willfully turning a blind eye to rampant copyright infringement, and despite having the physical ability and right by contract to prevent the infringing content from being uploaded and terminate repeat copyright infringers failed to do so.

68.     Plaintiff is informed and believes that Defendants Moosenetbiz, Rossetti, and Intergroup with actual and/or constructive knowledge of the rampant copyright infringement by the Third Party Direct Infringers who are and/or were using their services continue/continued to provide a forum for the infringements without which the infringements would not occur, thus knowingly and materially contributing to the unauthorized reproduction, public display, and/or distribution of the Photographs on the Website by the Third Party Direct Infringers.

69.     Plaintiff is informed and believes that Defendants Moosenetbiz, Rossetti, and Intergroup's conduct constitutes contributory, inducement, and vicarious

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

copyright infringement in violation of sections 106 and 501 of the Copyright Act, (17 U.S.C section 106 and 501.)

70.     Plaintiff is informed and believes that Hosting physically hosts the Website in its physical facilities and/or on its servers and routes internet traffic to and from the Website and therefore has direct control over the "master switch" that keeps the website online and available.

71.     Plaintiff is informed and believes that Hosting's facilities and/or servers are an essential step in the infringement process because without Hosting's servers the Third Party Direct Infringers would not have been able to copy and upload the infringing Photographs onto the Website.

72.     Plaintiff is informed and believes that Hosting had the right and ability by simple means to stop the infringing activity by, inter alia, terminating its essential hosting services to the Website, thus turning of the "master switch."

73.     Plaintiff is informed and believes that despite having the actual and legal ability to terminate services to the Website, Hosting failed to do so even after receiving actual and/or constructive knowledge that infringements were rampant on the Website and, in fact, that the Website trafficked almost exclusively in the distribution of infringing photographs.

74.     Plaintiff is informed and believes that Hosting provided their services with actual or constructive knowledge that the user of their services was engaging in repeat copyright infringement.

75.     As such, Plaintiff is informed and believes that Hosting with actual and or constructive knowledge materially contributed to the direct infringements occurring on the Website constituting contributory copyright infringement in violation of sections 106 and 501 of the Copyright Act.

76.     Defendants' actions as alleged herein have caused Plaintiff damages.

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

77.     Defendants have shown that they intend to continue, unless restrained, to allow the use of Plaintiff's copyrighted photographic works, willfully infringing, and causing irreparable damages to Plaintiff for which he has no adequate remedy of law.

78.     Defendants unlawful acts have been and are interfering with and undermining Plaintiff's ability to market Plaintiff's own original photographic works, thereby impairing the value and prejudicing the sale or license by Plaintiff of his own photographic works.

79.     Plaintiff is entitled to a preliminary and permanent injunction restraining Defendants from engaging in further acts of copyright infringement and causing irreparable damage to Plaintiff for which he has no adequate remedy of law.

80.     Defendants, by contributing to the unauthorized appropriation and use of Plaintiff's original photographic works, have been and are engaging in acts of unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Plaintiff's goodwill and the public acceptance of Plaintiff's original photographic works.

81.     Because Defendants used or contributed to the use of Plaintiff's copyrighted photographic works without licenses, infringing the exclusive rights of Plaintiff as the copyright owner, Plaintiff is entitled to have the infringing publication/distribution and any improperly acquired likenesses or images (however stored or recorded) impounded while this action is pending.

### FIRST CLAIM FOR RELIEF
### SECONDARY COPYRIGHT INFRINGEMENT

Contributory, Inducement, and Vicarious Copyright Infringement
January 2012 and July 2012 Infringements
**(Against Defendants Moosenetbiz and Rossetti Only)**

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

82.     Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and Exhibits as if fully set forth herein.

83.     Plaintiff is informed and believes that by the actions alleged above, Defendants Moosenetbiz and Rossetti had either constructive knowledge and/or actual knowledge of the direct infringements by the Third Party Direct Infringers.

84.     Plaintiff is informed and believes that by the actions alleged above, Defendants knowingly encouraged, assisted, enabled, induced, facilitated, caused, and/or materially contributed to the January 2012 and July 2012 Infringements by the Third Party Direct Infringers who copied, displayed, publicized, and distributed the infringing Photographs without Plaintiff's permission to a global audience via the World Wide Web on the Website.

85.     Defendants' conduct constitutes contributory and inducement of copyright infringement of Plaintiff's copyrights and exclusive rights in the Photographs in violation of 17 U.S.C. § 106 and 501.

86.     Plaintiff is further informed and believes that Defendants have had the right and ability to supervise and control the infringing conduct alleged above and that Defendants have derived, or have continuously attempted or intended to derive a direct financial benefit from the infringing display and use of the infringing Photographs.  Such conduct constitutes vicarious infringement of Plaintiff's copyrights and exclusive rights in violation of section 106 and 501 of the Copyright Act (17 U.S.C. §§ 106 and 501).

87.     Plaintiff is informed and believes that Defendants' acts of infringement were ongoing, willful, intentional, and purposeful, and/or in reckless disregard of and with indifference to Plaintiff's rights in that Defendants knew or recklessly failed to know that they (nor the Third Party Direct Infringers) had the right to use the Photographs in the manner in which they used the Photographs.

COMPLAINT FOR COPYPRIGHT INFRINGEMENT

88.     Plaintiff is informed and believes that Defendants actions do not qualify for protection under the Digital Millennium Copyright Act ("DMCA") or the "safe harbor" provision of 17 U.S.C. section 512 because, *inter alia*, at the time the infringements began Defendants had failed to implement a reasonable policy for terminating repeat copyright infringers and Defendants continued to publicly display, distribute, and publish, the Photograph(s) and/or other copyrighted photographs after receiving actual and/or constructive "red flag" notice of their infringing nature; and earned funds from the use and views of the infringing images; and do not otherwise comply with 17 U.S.C. section 512.  Plaintiff is further informed and believes that Defendants activities do not fall into the definition of a service provider under 17 U.S.C. section 512(k), nor do the services provided by Defendants fall into any of the enumerated categories of safe harbor provided in 17 U.S.C. section 512 (a)(b)(c), or (d).

89.     As a direct and proximate result of Defendants' infringements, Plaintiff was damaged and is entitled to recover from Defendants the damages, including attorney's fees, he has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement alleged above.  At present, the amount of damages, gains, profits and advantages cannot be fully ascertained by Plaintiff, but will be established according to proof at trial.  Plaintiff also seeks to recover statutory damages for Defendants' infringement of his copyrights of up to $150,000.00 per infringement.

90.     Plaintiff is entitled to a preliminary and permanent injunction restraining Defendants from engaging in further acts of copyright infringement and causing irreparable damage to Plaintiff for which he has no adequate remedy of law.

## SECOND CLAIM FOR RELIEF

COMPLAINT FOR COPPYRIGHT INFRINGEMENT

## SECONDARY COPYRIGHT INFRINGEMENT

Contributory, Inducement, and Vicarious Copyright Infringement
October 2013 Infringements
**(Against Defendant Intergroup Only)**

91.    Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and all Exhibits as if fully set forth herein.

92.    By the actions alleged above, Defendant Intergroup had either constructive knowledge and/or actual knowledge of the direct infringements by the Third Party Direct Infringers.

93.    Plaintiff is informed and believes that by the actions alleged above, Intergroup knowingly encouraged, assisted, enabled, induced, facilitated, caused, and/or materially contributed to the October 2013 Infringements by the Third Party Direct Infringers who copied, displayed, publicized, distributed the infringing Photographs without Plaintiff's permission to a global audience via the World Wide Web on the Website.

94.    Intergroup's conduct constitutes contributory and inducement of copyright infringement of Plaintiff's copyrights and exclusive rights in the Photographs in violation of 17 U.S.C. § 106 and 501.

95.    Plaintiff is further informed and believes that Intergroup has had the right and ability to supervise and control the infringing conduct alleged above and that Intergroup has derived, or has continuously attempted or intended to derive a direct financial benefit from the infringing display and use of the infringing Photographs. Such conduct constitutes vicarious infringement of Plaintiff's copyrights and exclusive rights in violation of section 106 and 501 of the Copyright Act (17 U.S.C. §§ 106 and 501).

96.    Plaintiff is informed and believes that Intergroup's acts of infringement were ongoing, willful, intentional, and purposeful, and/or in reckless disregard of and

with indifference to Plaintiff's rights in that Intergroup knew or recklessly failed to know that neither it (nor the Third Party Direct Infringers) had the right to use the Photographs in the manner in which they used the Photographs.

97.     Plaintiff is informed and believes that Intergroup's actions do not qualify for protection under the Digital Millennium Copyright Act ("DMCA") or the "safe harbor" provision of 17 U.S.C. section 512 because, *inter alia*, at the time the infringements began Intergroup had failed to implement a reasonable policy for terminating repeat copyright infringers and Intergroup continued to publicly display, distribute, and publish, the Photograph(s) and/or other copyrighted photographs after receiving actual and/or constructive "red flag" notice of their infringing nature and, in fact, as of the filing of the instant Complaint, continues to publicly display photographs identified in the October 2013 DMCA Notice; and earned funds from the use and views of the infringing images; and do not otherwise comply with 17 U.S.C. section 512.  Plaintiff is further informed and believes that Intergroup's activities do not fall into the definition of a service provider under 17 U.S.C. section 512(k), nor do the services provided by Intergroup fall into any of the enumerated categories of safe harbor provided in 17 U.S.C. section 512 (a)(b)(c), or (d).

98.     As a direct and proximate result of Intergroup's infringements, Plaintiff was damaged and is entitled to recover from Intergroup the damages, including attorney's fees, he has sustained and will sustain, and any gains, profits and advantages obtained by Intergroup as a result of their acts of infringement alleged above.  At present, the amount of damages, gains, profits and advantages cannot be fully ascertained by Plaintiff, but will be established according to proof at trial. Plaintiff also seeks to recover statutory damages for Intergroup's infringement of his copyrights of up to $150,000.00 per infringement.

99.   Plaintiff is entitled to a preliminary and permanent injunction restraining Intergroup from engaging in further acts of copyright infringement and causing irreparable damage to Plaintiff for which he has no adequate remedy of law.

## THIRD CLAIM FOR RELIEF
### CONTRIBUTORY COPYRIGHT INFRINGEMENT OF THE JANUARY 2012 INFRINGEMENTS, JULY 2012 INFRINGEMENTS, AND OCTOBER 2013 INFRINGEMENTS
### (AGAINST DEFENDANT HOSTING)
17 .S.C. §§ 106 and 501.

100.   Plaintiff incorporates by references all the foregoing paragraphs of this Complaint and Exhibits as if fully set forth herein.

101.   Plaintiff is informed and believes that Hosting obtained actual and/or constructive knowledge of specific infringement occurring on the Website through, *inter alia*, DMCA compliant "take down" notices sent to Hosting by Plaintiff (identifying his contact information as within Los Angeles, California), and DMCA compliant "take down" notices and other notices sent to Hosting by others identifying specific infringing activity on the Website.

102.   Plaintiff is further informed and believes that Hosting has failed to reasonably implement its policies, if any, concerning (DMCA) take down notices with respect to website it hosts, and in particular the Website.

103.   Plaintiff is informed and believes that Hosting has both the right through contract and physical ability to engage in a variety of reasonable means to terminate, limit or cease access to the Website along with the infringing images stored/residing on Hosting's servers or on systems or networks controlled or operated by Hosting.

104.   Plaintiff is informed and believes that despite Hosting's knowledge and

reason to know of the infringing activity on the Website and facts and circumstances that would make the infringing activity apparent, after obtaining knowledge of the infringing activity, failed to terminate the Website and storage of the images and access to the Website, failed to ensure that all infringing materials were expeditiously removed and in fact infringing material from the October 2013 DMCA Notice continues to be publicly displayed and distributed on the Website without authorization, and continued and still continue to actively provide essential services to the Website, including, *inter alia*, renewing agreement, storing and transmitting the infringing material for the Website, thereby materially contributed to the infringing conduct on the Website.

105. Plaintiff is informed and believes that Hosting's actions have created a safe haven for ongoing infringements.

106. Plaintiff is informed and believes that by the actions alleged above, Hosting, even after receiving constructive and/or actual knowledge of the rampant infringing activity occurring on the Website, knowingly encouraged, assisted, enabled, induced, facilitated, caused, and/or materially contributed to the January 2012 Infringements, the July 2012 Infringements, and the October 2013 Infringements by the Third Party Direct Infringers who unlawfully copied/reproduced, uploaded/downloaded, displayed, and publicly distributed, the infringing Photographs without Plaintiff's permission to a global audience via the World Wide Web on the Website.

107. Hosting's conduct constitutes contributory infringement of Plaintiff's copyrights and exclusive rights in the Photographs in violation of Section 106 and 501 of the Copyright Act (17 U.S.C.§§ 106 and 501).

108. Plaintiff is informed and believes that Hosting's acts of infringement were ongoing, willful, intentional, and purposeful, and/or in reckless disregard of and

with indifference to Plaintiff's rights in that Hosting's knew or recklessly failed to know that neither they nor the Third Party Direct Infringers (or the owners of the Website) had the right to use the Photographs in the manner in which they used the Photographs.

109.   Plaintiff is informed and believes that Hosting's actions do not qualify for protection under the Digital Millennium Copyright Act ("DMCA") or the "safe harbor" provision of 17 U.S.C. section 512 because, *inter alia*, at the time the infringements began Hosting's had failed to implement a reasonable policy for responding to DMCA complaints and Hosting's continued to publicly display, distribute, and publish, some of the Photographs after receiving notice of their infringing nature; failed to terminate essential services even after receiving actual and/or constructive/red flag notice that its services were being used by the Website for repeated copyright infringement, have failed to make available through their service, including through its website in a location accessible to the public the required information under 17 U.S.C. section 512(c)(2) and in fact appears no where on its website; and do not otherwise comply with 17 U.S.C. section 512.

110.   As a direct and proximate result of Hosting's infringements, Plaintiff was damaged and is entitled to recover from Hosting's the damages, including attorney's fees, he has sustained and will sustain, and any gains, profits and advantages obtained by Hosting as a result of its acts of infringement alleged above.  At present, the amount of damages, gains, profits and advantages cannot be fully ascertained by Plaintiff, but will be established according to proof at trial. Plaintiff also seeks to recover statutory damages for Hosting's infringement of his copyrights of up to $150,000.00 per infringement.

111.   Plaintiff is entitled to a preliminary and permanent injunction restraining Hosting from engaging in further acts of copyright infringement and causing

irreparable damage to Plaintiff for which he has no adequate remedy of law.

## FOURTH CLAIM FOR RELIEF

**DIRECT COPYRIGHT INFRINGEMENT**
**JANUARY 2012 INFRINGEMENTS, JULY 2012 INFRINGEMENTS, AND OCTOBER 2013 INFRINGEMENTS**

(Against Doe Defendants Only)

112.   Plaintiff incorporates by references all the foregoing paragraphs of this Complaint and Exhibits as if fully set forth herein.

113.   By the actions alleged above, the Doe Defendant Third Party Direct Infringers have infringed and will continue to infringe on Plaintiff's copyrights by copying, displaying, publishing, and distributing Plaintiff's copyrighted Photographs without permission to a global audience on the World Wide Web.

114.   Plaintiff is informed and believes that the Doe Defendant Third Party Direct Infringers' acts of infringement were ongoing, willful, intentional, and purposeful, and/or in reckless disregard of and with indifference to Plaintiff's rights in that the Doe Defendant Third Party Direct Infringers knew or recklessly failed to know that they did not have the rights to use the Photographs in the manner in which they used the Photographs.

115.   Plaintiff is informed and believes that, by the actions alleged above, the Doe Defendant Third Party Direct Infringers have violated Plaintiff's exclusive rights as the copyright owner to reproduce, adapt, display, distribute, and/or create derivative works under 17 U.S.C. §§ 101 et. seq. making Defendants liable for willful direct copyright infringement.

116.   As a direct and proximate result of the Doe Defendant's infringements, Plaintiff was damaged and is entitled to recover from Doe Defendants the damages, including attorney's fees, he has sustained and will sustain, and any

gains, profits and advantages obtained by Doe Defendants as a result of their acts of infringement alleged above.  At present, the amount of damages, gains, profits and advantages cannot be fully ascertained by Plaintiff, but will be established according to proof at trial.  Plaintiff also seeks to recover statutory damages for Do Defendants' infringement of his copyrights of up to $150,000.00 per infringement.

117.   Plaintiff is entitled to a preliminary and permanent injunction restraining Doe Defendants from engaging in further acts of copyright infringement and causing irreparable damage to Plaintiff for which he has no adequate remedy of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

118.   For Plaintiff's actual damages.

119.   For a full accounting and disgorgement of all profits, income, receipts, or other benefits derived by Defendants as a result of their willful and unlawful conduct.

120.   For statutory damages under the Copyright Act of up to $150,000.00 per infringement and,

121.   For prejudgment interest.

122.   For attorneys' fees and costs.

123.   For preliminary and permanent injunctive relief from ongoing infringing activities, including, but not limited to:

a. enjoining Defendant, and all persons acting in concert or participation with them, from: directly or indirectly infringing in any manner, or causing, contributing to, enabling, facilitating, or participating in the infringement of Plaintiff's copyrights (whether now in existence or hereafter created) or exclusive rights under copyright, and

b.  the seizure of all property made in, or used to assist in the violation of Plaintiff's exclusive copyrights pursuant to 17 U.S.C. §503, including, but not limited to, all copies of the Photograph, all domains and all servers and other computer equipment used to publish, broadcast or archive the Photograph; and

124.   For such other and further relief as this Court deems just and appropriate.

Dated: January 12, 2015

WOOLF GAFNI & CIRLIN LLP


By: /s/ Adam I. Gafni
Adam I. Gafni
Attorneys for Plaintiff
Barry Rosen

# <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial in this case.

Dated: January 12, 2015

WOOLF GAFNI & CIRLIN LLP

By:  /s/ Adam I. Gafni
Adam I. Gafni
Attorneys for Plaintiff
Barry Rosen

COMPLAINT FOR COPPYRIGHT INFRINGEMENT